# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| CRYSTAL BAISDEN, | : Case No. 3:16-cv-129 |
|---|---|
| Plaintiff, | : Magistrate Judge Sharon L. Ovington |
| | : (by full consent of the parties) |
| vs. | : |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

# DECISION AND ENTRY

## I. Introduction

Plaintiff Crystal Baisden brings this case challenging the Social Security Administration's denial of her application for period of disability and Disability Insurance Benefits. She applied for benefits on March 7, 2013, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) George D. McHugh concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #5).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ McHugh's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since April 10, 2012. She was fifty years old at that time and was therefore considered a person "closely approaching advanced age" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(d). She has at least a high school education. *See id.* § 404.1564(b)(4).

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ McHugh that she is unable to work because of her mental and physical impairments. (Doc. #5, *PageID* #110). She has difficulty with her short-term memory: "something will happen and ten minutes later I may not even remember it." *Id.* at 92. She also has chronic fatigue. *Id.* She feels fatigued, achy, and sleepy all of the time, and she sleeps from approximately eleven at night to as late as one in the afternoon. *Id.* But even after sleeping that long, she does not have the energy to get up and do anything. *Id.*

Plaintiff also struggles with depression and anxiety. *Id.* at 98. She is not interested in doing anything. *Id.* She isolates herself and does not leave her house very often. *Id.* at 98, 100. Additionally, she has difficulty falling asleep. *Id.* at 98. Every three to four days, she experiences mood swings—going from "perfectly happy to completely somber, depressed and want to just go hide in my room and like that, split second." *Id.* at 99. She also has trouble concentrating. *Id.* Plaintiff's primary-care

physician, Dr. Gardner, prescribed duloxetine and escitalopram for both depression and anxiety. *Id.* at 103, 106.

She sometimes experiences panic or anxiety attacks—most of which occur in the car. *Id.* at 103. She described, "It's like all of a sudden I just feel a wafting, I don't know, tightness come up and I start getting really nervous. I just feel like I have to go home and stay there." *Id*.

Plaintiff has chronic lower back pain that has gotten progressively worse in the past ten years. *Id.* at 94. She has aching pain most of time and sharp pain if she moves the wrong way. *Id*. The pain radiates down her left leg once or twice per day. *Id.* at 95. On a scale from one to ten, her back pain ordinarily falls at an eight. *Id*. She takes oxycodone every six hours and puts a Lidoderm patch on it. *Id*. She sometimes uses a heating pad to help the pain. *Id.* at 97. Her pain gets worse if she stands or walks too long. *Id.* at 95. Plaintiff is unable to bend at the waist or twist. *Id*. Her doctor told her that her back is not bad enough for surgery. *Id.* at 96.

In addition, Plaintiff has migraines one to three times a week. *Id.* at 108. When she feels one starting, she takes Imitrex and Percocet, puts ice on her forehead and neck, and lies down motionless with something over her eyes. *Id*. They usually last six hours. *Id.* at 109.

Plaintiff last worked at TelePerformance. *Id.* at 91. She was fired in March 2012 because of poor job performance and calling in sick too often. *Id*. She looked for part-time work in November 2012 but was not able to find any. *Id.* at 110.

Plaintiff lives with her husband, 33-year-old son, and mother. *Id.* at 90, 109. She has a driver's license and usually drives once per week. *Id.* at 90, 101. She is able to dress herself. *Id.* at 107. Her son does most of the housework but she can do small things such as sweep or straighten up. *Id*.

## B. Medical Opinions

### i. Robert R. Gardner, D.O.

Plaintiff's treating physician, Dr. Gardner, completed interrogatories and a medical assessment of ability to do work-related activities on September 17, 2014. *Id.* at 516-29. He has treated Plaintiff since January 1999. *Id.* at 521. He treats her for migraines, lower back pain, depression, shoulder pain, hypothyroidism, and status post cerebrovascular accident from cerebral artery aneurysm. *Id.* at 522. He explained that "all her medical [and] emotional (depressive) [symptoms] may act independently or aggravate each other …." *Id.* at 523.

Dr. Gardner opined Plaintiff could lift and carry five pounds occasionally and less than five pounds frequently. *Id.* at 517. She could stand for fifteen minutes at one time for a total of one hour in an eight-hour day and sit for thirty minutes for a total of one to two hours. *Id*. She could occasionally balance and never climb, stoop, crouch, kneel, or crawl. *Id.* at 518. Her abilities to reach, handle, finger, and push/pull are affected by her impairments. *Id*. Plaintiff cannot tolerate fumes because they precipitate her migraine headaches. *Id.* at 519. She does not have the residual functional ability to do sedentary work on a sustained basis because she is easily fatigued. *Id*.

Dr. Gardner further opined that Plaintiff would be unable to perform several work-related functions as a result of her physical and mental impairments, including the ability to be prompt and regular in attendance; respond appropriately to supervision, co-workers, and customary work pressures; relate predictably in social situations; demonstrate reliability; maintain concentration and attention for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday or workweek without interruption from psychologically and/or physically based symptoms and perform at a consistent pace without unreasonable numbers and length of rest periods; respond appropriately to changes in a routine work setting; and sustain ordinary routine without special supervision. *Id.* at 523-28. She has moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; and marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. *Id.* at 529.

### ii. Donald J. Kramer, Ph.D.

Dr. Kramer evaluated Plaintiff on June 7, 2013. *Id.* at 461. He diagnosed adjustment disorder with mixed emotional features and cognitive disorder not otherwise specified (NOS) and assigned a global assessment of functioning score of fifty-seven. *Id.* at 465. He noted that Plaintiff displayed "a certain vagueness and slowness in her speech and thought." *Id.* at 466. Based on Plaintiff's description of her memory impairment, Dr. Kramer suggested that "formal memory testing may be helpful to more fully evaluate the nature and extent of her limitations in this area." *Id.* He found that Plaintiff appeared to

have the intellectual ability to perform simple tasks but her attention and concentration, persistence, and pace were "a little weak …." *Id.*

### iii. Stephen W. Halmi, Psy.D.

On December 2, 2013, Dr. Halmi evaluated Plaintiff. *Id.* at 483. He diagnosed depressive disorder NOS and anxiety disorder NOS and assigned a global assessment of functioning score of sixty. *Id.* at 488. He opined, "her prognosis is guarded because her psychological symptoms are highly connected to her current circumstances (i.e., unemployment; financial problems; ongoing medical problems)." *Id.* at 488-89.

Dr. Halmi found evidence of short term and some remote memory problems and opined Plaintiff is capable of understanding, remembering, and carrying out simple instructions but would likely have difficulty with multi-step instructions. *Id.* at 490. However, "she would likely have difficulty maintaining adequate attention, concentration, persistence, and pace to perform simple, repetitive tasks for any extended period of time." *Id.* Plaintiff would likely respond appropriately to supervisors and co-workers. *Id.* She would not have significant problems getting along with difficult people and could solve unforeseen, novel problems. *Id.* She would, however, have difficulty meeting deadlines due to her lack of persistence, motivation, and initiative. *Id.*

### iv. Karen Terry, Ph.D., & Katherine Fernandez, Psy.D.

Dr. Terry reviewed Plaintiff's records on July 2, 2013. *Id.* at 117-31. She opined Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically-based

symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; and travel to unfamiliar places or use public transportation. *Id.* at 127-29.

On December 17, 2013, Dr. Fernandez reviewed Plaintiff's records and affirmed Dr. Terry's assessment. *Id.* at 133-50.

### v. Venkatachala Sreenivas, M.D., & Kourosh Golestany, M.D.

On July 15, 2013, Dr. Sreenivas reviewed Plaintiff's records. *Id.* at 117-31. Dr. Sreenivas opined Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently. *Id.* at 125. She could stand and/or walk for six hours in an eight-hour day and sit for six hours. *Id.* She should never climb ladders, ropes, or scaffolds and frequently stoop. *Id.* at 126. She should avoid all exposure to hazards such as machinery and heights. *Id.* Dr. Sreenivas concluded Plaintiff is not under a disability. *Id.* at 131.

Dr. Golestany reviewed Plaintiff's records on November 12, 2013 and affirmed Dr. Sreenivas' conclusions. *Id.* at 133-50.

## III. <u>Standard of Review</u>

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful

7

activity," in Social Security lexicon. 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

IV. **The ALJ's Decision**

As noted previously, it fell to ALJ McHugh to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

- Step 1: Plaintiff has not engaged in substantial gainful employment since April 10, 2012.

- Step 2: She has the severe impairments of "Aneurysm; Late effects of Cerebrovascular Disease (CVA); Hypertension; Thyroid Disorder; degenerative disc disease (DDD) of the lumbar spine; Short Term Memory Loss; Depression with Anxiety …."

- Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

- Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following limitations: (1) lifting and carrying up to 20 lbs. occasionally and up to 10 lbs. frequently; (2) walking or standing with normal breaks up to 6 hours; (3) sitting up to 6 hours; (4) no climbing of ropes, scaffolds or ladders; (5) occasional climbing of ramps and stairs; (6) frequent stooping, kneeling, crouching and crawling; (7) no work around hazards such as unprotected heights or hazardous machinery; (8) limited to perform simple, routine, repetitive tasks, but not at a production rate or strict production quotas; (9) limited to work that requires only 1or 2 step procedures or instructions learned by short demonstration or less than 30 days; (10) limited to simple work-related decisions, (11) limited to occasional interaction with supervisors, coworkers, and the public; (12) no commercial driving as

9

>           part of job duties; (13) no teamwork or tandem tasks; and, (14) no
>           concentrated exposure to dust, fumes, odors, or pulmonary irritants."

> Step 4:   She is unable to perform any of her past relevant work.

> Step 5:   She could perform a significant number of jobs that exist in the
>           national economy.

(Doc. #5, *PageID* #s 67-78). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 78.

## V. Discussion

Plaintiff contends that the ALJ failed to properly evaluate the medical opinions of record and her credibility, pain, and symptoms pursuant to the Regulations. The Commissioner maintains that substantial evidence supports both the ALJ's assessment of the opinion evidence and the ALJ's finding that Plaintiff was not fully credible.

### A. Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

ALJ McHugh assigned the opinion of Dr. Gardner, Plaintiff's treating physician, "no weight." (Doc. #5, *PageID* #76). Although the ALJ refers to Dr. Gardner as her treating physician, he failed to mention the treating physician rule. He does, however, mention both of its triggering conditions. Under the first condition—whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques— he found that Dr. Gardner's opinion that Plaintiff "would be precluded from working all but a very reduced range of part-time work at less than the sedentary exertion level" was "not supported by any evidence in the medical record." *Id.* He noted that Dr. Gardner attributed Plaintiff's limitations to the residuals of her aneurysm, lower back pain, and residual weakness in her right upper and lower extremities. *Id.*

Dr. Gardner's remarks included more detail than ALJ McHugh suggested: "[Plaintiff] has multiple medical conditions including 1) Remote CVA [with] residual [right upper extremity and lower extremity] weakness[;] 2) Fatigue—chronic, precipitating migraines[;] 3) [Chronic lower back pain], DTD/DDD precludes continuous sitting/standing/ambulating[;] [and] 4) [Right] shoulder [] derangement—precludes reaching[.]" *Id.* at 520. And, all of Dr. Gardner's responses include an explanation for his findings.

Notably, "For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence." Soc. Sec. R. 96-2p, 1996 WL 374188, at *2. To say that Dr. Gardner's is not supported by *any evidence* in the record is—at best—an exaggeration. ALJ McHugh acknowledged several types of evidence: a CT scan of Plaintiff's lumbar spine revealed degenerative disc disease; and diagnostic tests showed hypothyroidism/thyroid disease and hypertension. (Doc. #5, *PageID* #69) (citing exhibits 1F-2F, 5F, 7F-8F, 11F).

Under the second condition—whether the opinion is not inconsistent with the other substantial evidence in the record—ALJ McHugh found that Dr. Gardner's opinion was "inconsistent with his findings of normal strength and movement in all extremities and only finding of mild tenderness to palpation and the lumbar spine. The diagnostic findings in [Plaintiff's] lumbar spine also showed only a mild degenerative condition at L4-5 and L5-Sl without stenosis or nerve root impingement …." *Id.* at 76 (internal citations omitted).

The Social Security Administration defines "not inconsistent:" "This is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." Soc. Sec. R. 96-2p, 1996 WL 374188, at *3.

Dr. Gardner's treatment notes do not contradict or conflict with his opinion. ALJ McHugh minimizes Dr. Gardner's treatment notes by indicating that he found only "mild tenderness to palpation and the lumbar spine." Dr. Gardner does not use the word "mild." Instead, he noted tenderness and "*pain* to palpation." (Doc. #5, *PageID* #544) (emphasis added). He also regularly notes back spasms and decreased range of motion. *Id.* at 507, 544, 550, 561, 566. Additionally, Dr. Gardner noted in November 2014 that Plaintiff had limited ambulation. *Id.* at 549. In April and July 2014, he indicated that she had tenderness in her right anterior shoulder as well as pain with range of motion. *Id.* at 501, 566. Dr. Gardner observed in September 2014 that Plaintiff had decreased right hand grip. *Id.* at 561. The signs and symptoms recorded by Dr. Gardner are not inconsistent with his opinion—indeed, they support it.

However, even if Dr. Gardner's opinion is not entitled to controlling weight, ALJ McHugh's review is not complete: If a treating physician's opinion does not meet either condition of the treating physician rule, it "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors

13

provided in 20 C.F.R. §§ 404.1527 and 416.927." Soc. Sec. R. 96-2p, 1996 WL 374188, at *4.

ALJ McHugh failed to acknowledge any of the factors. For example, he did not recognize Dr. Gardner's extensive treatment relationship with Plaintiff. *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). Dr. Gardner began treating Plaintiff in January 1999, and he saw Plaintiff five times in 2012, five times in 2013, and seven times in 2014. (Doc. #5, *PageID* #521); *see* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). He provided an explanation for each of his opinions. For example, he indicates Plaintiff's exposure to fumes is restricted because they precipitate her migraine headaches. (Doc. #5, *PageID* #519). And, Plaintiff cannot perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances because "[v]ariability [and] unpredictability of [her symptoms] will impair [her] tolerances." *Id.* at 526; *see* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). As explained above, Dr. Gardner's treatment notes are consistent with his opinion. *See* 20 C.F.R. §

404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

By ignoring the factors, ALJ McHugh failed to give Dr. Gardner the deference he deserved as Plaintiff's treating physician. *See Rogers*, 486 F.3d at 242 (citation omitted) ("[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding."). This constitutes error. *See Bowen*, 478 F.3d at 746 ("[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." (citing *Wilson,* 378 F.3d at 546-47)).

By comparison, ALJ McHugh assigned "great weight" to the opinions of the State agency record-reviewing physicians. (Doc. #5, *PageID* #76). He found that "their assessments are consistent with the objective medical evidence in [Plaintiff's] treatment records, except that [Plaintiff's] subjective complaints have been accommodated herein by somewhat greater restriction with respect to postural and climbing activities." *Id.*

The ALJ's terse assessment of their opinions constitutes error under the Regulations: "[ALJs] … are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." 20 C.F.R. § 404.1527(e)(2)(ii); *see* Soc. Sec. R. 96-6p, 1996 WL 374180, at *2. The ALJ did not provide any further explanation of his findings. He does not identify what evidence is

consistent with their assessments or which part of their opinions he altered to account for Plaintiff's subjective complaints.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[1]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or

---

[1] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of §405(g) due to the problems discussed above. On remand, the ALJ is directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability finding is vacated;

2. No finding is made as to whether Plaintiff Crystal Baisden was under a "disability" within the meaning of the Social Security Act;

3. This case is remanded to the Commissioner and the Administrative Law Judge under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case is terminated on the docket of this Court.

August 15, 2017  *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge